UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| ROBERT GROSS, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10-cv-00328-DBH |
| | ) | |
| JOHN GRIFFIN, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

### RECOMMENDED DECISION ON MOTION TO DISMISS OF ESTATE OF ROBERT FIORENTINO

Plaintiff Robert Gross complains against Defendants that they discriminated against him on account of sex and/or disability by failing to call upon him to provide vocational expert services to the Social Security Administration. According to Gross, Defendants wrongfully dropped him from the roster of vocational experts in order to favor female vocational experts and/or because Plaintiff has a speech impediment. Defendant Estate of Robert Fiorentino has filed a motion to dismiss asserting lack of subject matter jurisdiction, a probate code limitation on the survival of claims against decedent's estates, and qualified immunity. The Court referred the motion for report and recommended decision pursuant to 28 U.S.C. § 636. For reasons that follow, I recommend that the Court grant the motion.

#### ALLEGATIONS

To evaluate a motion to dismiss, the Court accepts as true the allegations set forth in Plaintiff Gross's First Amended Complaint (Doc. No. 14). According to that pleading, Gross served as a vocational expert for the Social Security Administration for twenty-five years. (Id. ¶ 9.) The Administration maintains a roster of vocational experts to call upon, as needed, to testify

at hearings presided over by administrative law judges.  (Id. ¶ 10.)  On October 1, 2003, Gross offered or agreed to provide his services to the Administration pursuant to a Blanket Purchase Agreement for a three-year period concluding September 30, 2006.  (Id. ¶ 11.)  The Agreement is not attached to any pleading on the docket.

The Administration maintains a policy stating that vocational experts will be assigned on a rotating basis, so that select individuals will not receive additional appointments before other individuals on the roster have been called.  (Id.)  During the term of the Blanket Purchase Agreement, Gross became concerned that he was not receiving appointments in the normal rotation.  (Id. ¶ 12.)  In May of 2005, after a seven-month hiatus from being called to serve, Gross wrote to decedent Robert Fiorentino of the Portland office to express his concern and to request any internal communications related to the decision not to utilize his services.  (Id. ¶ 13.) Defendant John Griffin, Regional Director of Operations in Boston, responded later that month by mail and stated that the Administration could discontinue the Blanket Purchase Agreement at any time and that no appeal process was available.  (Id. ¶ 14.)  Gross retained counsel and continued the letter writing campaign, seeking intervention by, or information from, others within the Administration who might explain to him why he was removed and how he might pursue a claim of discrimination.  (Id. ¶¶ 15-27.)  Someone eventually suggested to Gross that he contact the Equal Employment Opportunity Commission.  (Id. ¶ 26.)

Pursuant to freedom of information requests directed to the Administration, Gross has received spreadsheets describing vocational expert utilization by the Administration's Portland office.  Those spreadsheets show that the office predominantly relied on female vocational experts, with one woman being appointed in one-fifth or more of the cases in 2001 through 2005. (Id. ¶¶ 28-33.)

The EEOC conducted an investigation in 2009 and interviewed Administrative Law Judge James Russell, whose estate is another named defendant. Judge Russell informed the EEOC that he had requested the removal of two vocational experts from the roster, both males, and that his request was directed to Defendant Griffin, the regional officer responsible for vocational experts. (Id. ¶¶ 36-39.) Gross alleges that the "ultimate decision" to remove him from the roster was made by Griffin. (Id. ¶ 40.)

Gross includes the Estate of Robert Fiorentino among his named defendants because he faults Fiorentino for having failed to provide him with notice and an opportunity to be heard concerning his removal from the roster. (Id. ¶ 42.) According to Gross, prior to Fiorentino's death, Fiorentino was "the Hearing Office Director and was responsible for implementing all operational orders emanating from the Chief Administrative Law Judge of the Portland, Maine Office of the Social Security Administration." (Id. ¶ 4.)

According to Gross, he "had a constitutionally protected property interest in his contract as a vocational expert with the Social Security Administration." (Id. ¶ 46.) He maintains that this relationship was governed by policies and procedures with which the Administration failed to comply. (Id. ¶ 47.)

For his first count, Gross alleges that he "has an implied cause of action against the Defendants for violation of his due process rights under . . . Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)." (Id. ¶ 49.)

For his second count, Gross alleges a violation of equal protection based on gender and, once again, states that he has an implied cause of action against the defendants under Bivens. (Id. ¶ 58.)

For his third count, Gross again alleges an equal protection claim. He explains that he "sometimes" stutters when speaking, due to a speech impediment, and maintains that the defendants "jointly and severally" terminated him because of this "disability," without ever attempting to make a reasonable accommodation. (Id. ¶¶ 61, 64, 65.) Gross cites Bivens as the source of this claim as well. (Id. ¶ 67.)

In his preliminary recitation, Gross alleges that his case also arises under the Civil Rights Act, 42 U.S.C. §§ 1981 *et. seq.* (Id. ¶ 5.) For his jurisdictional averment, Gross relies on 28 U.S.C. § 1331, federal question jurisdiction. (Id. ¶ 6.) Gross asserts all of his claims against the defendants in their individual capacities. There are no official capacity claims in the First Amended Complaint.

## PROCEDURAL HISTORY

The Estate's motion recites the prolonged pleading history in this case. For present purposes, it suffices to state that Gross initially filed an official-capacity claim against Michael Astrue, Commissioner of the Social Security Administration, without naming any other defendants. That complaint recited four counts: a due process violation; breach of contract; an equal protection violation; and an Americans with Disabilities Act claim. The Court dismissed the claims against the Commissioner, with prejudice, following Gross's introduction of his First Amended Complaint naming defendants other than the Commissioner, in light of conferences of counsel in which Gross consented to dismissal of the Commissioner with prejudice, based on arguments raised in the Commissioner's motion to dismiss. (Dec. 3, 2010, Order on Mot. to Dismiss, Doc. No. 16 (referencing Nov. 19, 2010, Conf. of Counsel, Doc. No. 13)).) In his motion to amend, Gross explained that he sought to cure mistakes in his original complaint "to specifically name the individual actors whom he believes violated his civil rights and by

4

amending the Claims to remove the contract claim and to lodge the disability claims as an equal protection count." (Mot. to Amend at 2, Doc. No. 6.)

## **MOTION TO DISMISS STANDARDS**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may plead the defense of lack of subject matter jurisdiction by motion to dismiss. The court is free to consider extrinsic evidence in determining subject matter jurisdiction, whether that evidence is introduced by the plaintiff or by the defendant, and the burden falls on the plaintiff to prove that subject matter jurisdiction exists. Aversa v. United States, 99 F.3d 1200, 1209-10 (1st Cir. 1996). The Estate has not introduced the Blanket Purchase Agreement in support of its request for dismissal on jurisdictional grounds. Nor has Gross introduced it, or any other document, to support his contention that this Court has jurisdiction over the subject matter of this dispute. Ordinarily, a court should resolve challenges to its exercise of jurisdiction over the subject matter of a case before proceeding to address the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

Pursuant to Rule 12(b)(6), a defendant may also advance a statute of limitation defense when the passage of time prevents a plaintiff from stating "a claim upon which relief can be granted." However, the facts supporting the defense are supposed to be clear on the face of the plaintiff's pleadings. Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009). If the movant introduces documents outside the pleadings to validate its defense, the court may only consider the extraneous material by converting the motion to dismiss into a motion for summary judgment, and it may only do that if it gives the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Fed. R. Civ. P. 12(d)). An exception is recognized,

however, which permits a court to consider documents that are not reasonably subject to challenge based on lack of authenticity, such as some public records and documents that are central to, incorporated into or sufficiently referred to in the complaint. Greenier v. Pace, Local No. 1188, 201 F. Supp. 2d 172, 177 (D. Me. 2002) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Moreover, the idea that non-movants must receive advance notice of an intention to convert a motion to dismiss into a motion for summary judgment is something of a misnomer, for when the movant attaches matters outside the pleadings and the non-movant has received those materials without challenging their accuracy and without responding to them, the court is not really obliged to afford "express notice" of an intention to convert the motion. Nor is the court required to provide any additional time to respond beyond the time afforded in connection with the original motion. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60-61 (1st Cir 2000).

## DISCUSSION

The United States Attorney's Office has filed a motion to dismiss on behalf of Jacqueline Fiorentino, Personal Representative of the Estate of Robert Fiorentino. (Doc. No. 25.) According to the Estate, the claims against it cannot proceed because it published notice to creditors of Mr. Fiorentino's death, as outlined in the Maine Probate Code, 18-A M.R.S. § 3-801, and the passage of time has "forever barred" claims not presented within time limitations set by the Code. (Mot. to Dismiss at 8.) The Estate also challenges the existence of subject matter jurisdiction, but in its second rather than its first argument. According to the Estate, this case grows out of a contract dispute and the Court of Federal Claims had exclusive jurisdiction over this kind of case under the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.* (Id. at 8-9.) Should the first two arguments fail, the Estate argues that the circumstances of the case do not justify

recognition of an implied cause of action under Bivens. (Id. at 10-12.) If that third line of defense falters, the Estate raises qualified immunity as a defense, observing that the First Amended Complaint does not connect Mr. Fiorentino to any decision associated with the composition of the Portland vocational expert roster and arguing that a Fifth Amendment due process right in this context is not clearly established in law. (Id. at 12-14.)

In his opposition memorandum, Gross describes the probate bar as a "red herring" because the Government is providing the Estate with a defense and Gross attempts to explain why the Probate Code does not actually bar his claims against the Personal Representative of the Estate. This argument is provided under a "Section 1983" heading, although Section 1983 is not mentioned in the First Amended Complaint and the defendants were federal rather than state actors. (Response at 7-8.) Gross otherwise argues that the Contract Disputes Act (CDA) has nothing to do with his action because the Blanket Purchase Agreement was not a binding contract. Nevertheless, Gross contends that there is an equal protection interest at stake that requires protection from deprivation under the Fifth Amendment. Gross also contends that he was entitled to some notice and information from the Administration about how to pursue his claims if they were, in fact, subject to the CDA. The fact that he did not receive any notification, he says, demonstrates that the Blanket Purchase Agreement is not the kind of contract that is subject to the CDA. Gross repeats the allegations of his amended complaint and maintains that they are sufficient to dispel the jurisdictional cloud hanging over his case. (Id. at 9-13.) Gross argues that his claims must proceed as Bivens claims because he has no other avenue for redress. Concerning such other avenues, Gross repeats that the CDA does not apply and he also asserts

that Title VII did not provide him with any remedy against the Administration.[1] Gross says his equal protection claims are supported by Davis v. Passman, 442 U.S. 228 (1979). (Id. at 13-14.) As for Fiorentino's personal involvement in any deprivation, Gross says Fiorentino was responsible for implementing and administering all orders respecting the roster and the rotation of vocational experts. Thus, if Fiorentino assigned vocational experts in a way that favors females, he shares in liability, according to Gross. Gross does not offer an explanation why he alleges that Fiorentino harbored discriminatory bias toward him on account of disability. He simply asserts that disability discrimination should be treated as another equal protection interest under the Fifth Amendment. Gross does not support the reference to Section 1981 of the Civil Rights Act that is found in his amended complaint or the reference to Section 1983 that is found in his responsive memorandum and any reliance on these statutes is, therefore, waived.[2] (Id. at 15-16.)

For reasons that follow, I conclude that the CDA is not the silver bullet that the Estate says it is because Gross has given up on any contract theory and advances his Bivens claims entirely on the basis of a right to serve as a vocational expert on equal terms with other qualified persons regardless of gender or disability. So restricted, the Bivens claims invoke this Court's federal question jurisdiction. However, I agree with the Estate that the Maine Probate Code

---

[1] Gross states in his responsive memorandum that he has "sought to utilize Title VII to safeguard his right, but has received a ruling that Title VII does not protect him." (Response at 14.) In fact, none of Gross's pleadings have made any mention of Title VII. Title VII would only be applicable if Gross was an Administration employee or applicant for employment and Gross has not alleged employee status. 42 U.S.C. § 2000e-16. Even in that scenario, Gross would not have discrimination claims against individual supervisors or decision makers within the Administration. Id. § 2000e-16(c); cf. Fantini v. Salem State Coll., 557 F.3d 22, 30 (1st Cir. 2009) (foreclosing individual liability claims in the private sector context, but holding, more broadly, that "there is no individual employee liability under Title VII.").

[2] Section 1983 does not apply here because the individual defendants were not state actors. 42 U.S.C. § 1983 (limiting liability to persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"). Nor does Section 1981 apply outside of the context of racial discrimination. Fantini, 557 F.3d at 33-34.

8

imposes a limitation on the survival of any <u>Bivens</u> claim against the Personal Representative of Robert Fiorentino's Estate. This recommendation does not reach the question of whether a vocational expert on the Administration's roster of experts has an interest protected by the Due Process Clause of the Fifth Amendment or the related question of whether a claim premised on such an interest is clearly established for purposes of the qualified immunity defense.

**A.     Subject Matter Jurisdiction**

Gross provided vocational expert services to the Administration and this provision of services was subject to a Blanket Purchase Agreement that may or may not have afforded Gross certain rights related to his provision of vocational expert services on a rotating basis. To the extent that Gross seeks to pursue a contract claim or recover damages from the Administration based on a contract theory, his claims are subject to the Tucker Act, 28 U.S.C. § 1491. The Tucker Act gives the United States Court of Federal Claims jurisdiction:

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

This grant of jurisdiction to the Court of Federal Claims is exclusive, but "only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the [Court of Federal Claims]." <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 910 n.48 (1988). Elsewhere, Congress has specified that the United States District Court has concurrent jurisdiction with the Court of Federal Claims over:

> Any other civil action or claim against the United States, not exceeding $ 10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or

> implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41.

28 U.S.C. § 1346(a)(2) (so-called "Little Tucker" jurisdiction). Yet another jurisdictional consideration is associated with the Contract Disputes Act, 41 U.S.C. §§ 601 et seq., which applies "to any express or implied contract . . . entered into by an executive agency for . . . the procurement of services," id. § 602(a)(2), calls for claims to be submitted to a contracting officer in writing within six years of accrual, id. § 605(a), and provides for judicial review of agency action, id. § 609.

The Estate argues that this jurisdictional road map for contract claims against the United States does not leave any shoulder for Gross to present claims in this Court because Gross's allegations reference and complain of a wrong concerning a contractual relationship, while also describing damages in excess of $10,000. (Mot. to Dismiss at 8-10.) To the extent that Gross has attempted to advance a contract claim in prior versions of his action, he has failed to establish any basis for this Court to exercise jurisdiction. In response to the Estate's motion, Gross now disavows any contract claim or request for damages measured by a contract theory and changes the tenor of his contract allegations by asserting that the Blanket Purchase Agreement did not amount to an enforceable contract for services. (Response at 9-10.)

The case debated by the parties is Evers v. Astrue, 536 F.3d 651 (7th Cir. 2008). Evers presented a suit by a consulting physician whose services were purchased by the Administration following a competitive bidding process and an award of a three-year contract. The physician alleged a due process violation arising from termination of his contract and rejection of subsequent bids, allegedly in contravention of federal regulations. The question considered by the Seventh Circuit Court of Appeals was whether the Contract Disputes Act divested the district

10

court and the circuit court of appeals of jurisdiction over constitutional and regulatory claims because they "related to" a services contract. Id. at 653. The court also considered the viability of Bivens claims against individual officers. Id. at 655. The case additionally presented a claim for judicial review under the Administrative Procedures Act, but Gross has not advanced any such claim here.

In its opinion, the Seventh Circuit reviewed a district court order dismissing all claims relating to the termination of the physician's contract, including the claims against the individual defendants, because the Contract Disputes Act offered the "distinctive procedure for resolving" his claims. Id. The trial court, however, proceeded to exercise jurisdiction over the regulatory claim under the APA associated with the physician's bids for future contracts. Id. at 656. On review, the Seventh Circuit noted that the parties were in agreement that the Contract Disputes Act covered the contract in question and held that the Act preempted other jurisdictional bases for claims "relating to a contract." Id. at 657-58. The reach of this preemption, the Court held, extended to constitutional tort / due process claims against individual actors because the source of the physician's rights was a contract and the appropriate form of relief was contractual in nature. Id. at 658-59. However, the Court also observed that the physician received notice from the Administration and had a chance to present his version of the dispute before the contract was terminated. Id. at 660. In this context, the Court held that Bivens actions could not be maintained against individual officers under the Fifth Amendment. Id. at 661 ("[A] government contractor need not resort to constitutional tort suits against federal officers to vindicate his rights when he feels his contract has been unfairly terminated."). The Court next considered claims related to new bids to provide services and it extended its holding to such claims, but only to a limited extent. The Court relied on the jurisdictional ground only to the extent the physician

11

made due process claims concerning, or sought reversal of, contract termination.  Id.  As for rejection of new bids, which presented a regulatory issue, the Court agreed that this aspect of the case did not fall under the Contract Disputes Act because it concerned rights not dependent on a government contract.  Id.  ("[T]he claims alleged in Count III that related to Dr. Evers's subsequent bids for SSA contracts do not fall under the Contract Disputes Act.").

Gross asserts that the Blanket Purchase Agreement governing his provision of vocational expert services was not a proper government contract to procure services and he alleges that the Administration has taken that position in previous communications with him.  (Response at 9; First Am. Compl. ¶ 14.)  Gross otherwise explains that the Administration's regulations, which promise rotation of experts, are the source of his alleged right to serve in a consultative capacity on a regular, revolving basis, free from discrimination.  (First Am. Compl. ¶ 11.)  Gross has not backed up his references to the contents of the Blanket Purchase Agreement or correspondence from the Administration by attaching any exhibits to his amended complaint or to his responsive memorandum.  Nevertheless, it appears plausible that rostered experts like Gross do not have proper contract claims and are as likely to provide services under a regulatory framework, notwithstanding the use of written agreements or memoranda associated with their potential provision of expert testimony.  This deflects the Estate's jurisdictional challenge based on the preemptive impact of the Contract Disputes Act and/or the Tucker Act, but it requires the Court to disregard certain allegations about a contract and contract rights in yet another pleading maneuver by Gross.

Gross is seeking to vindicate alleged deprivations of constitutional rights and, though he alleges a history of underlying dealings involving the provision of services for a fee, the agreement in question allegedly disavows the formation of a contractual right to provide said

12

services.  Consequently, the source of the right in question is, allegedly, an implied duty on the part of the federal officer defendants to refrain from depriving Gross of an equal opportunity to serve the Administration as provided for in its regulations, policies, or procedures.

In the tort context, individual federal officers ordinarily enjoy a form of immunity from individual liability because the Federal Tort Claims Act's "Westfall" provisions authorize the United States to be substituted as the defendant and the remedy against the United States is made exclusive.  Hui v. Castaneda, 130 S. Ct. 1845, 1848, 1851 (2010);  Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000).  However, the Federal Tort Claims Act provides that the process and remedy it affords are not exclusive with respect to "a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States."  28 U.S.C. § 2679(b)(2).  Gross is attempting to advance precisely this kind of claim.  He explains that the source for his constitutional claim is the Supreme Court's Davis v. Passman opinion, where the Court recognized an implied Fifth Amendment claim for money damages against an individual federal officer.  This contention is adequate to invoke this Court's subject matter jurisdiction.

Relying on its holding in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court held in David v. Passman that a cause of action and a damages remedy against an individual federal officer is available under the United States Constitution when the officer violates the Due Process Clause of the Fifth Amendment.  442 U.S. 228, 229 (1979).  Passman involved the termination of a congressman's female administrative assistant based on the congressman's assertion that he required a male to perform her job.  Id. at 230.  The asserted jurisdictional basis, as in this case, was 28 U.S.C. § 1331, though in a prior form.  Reviewing a circuit court opinion that no constitutional claim existed for this kind of injury, the

13

Supreme Court reaffirmed an assessment it previously offered in Butz v. Economou, 438 U.S. 478 (1978): "the decision in Bivens established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Passman, 442 U.S. at 234 (quoting Economou, 438 U.S. at 504)). In the course of rendering its opinion, the Court referenced its own precedent to the effect that the Due Process Clause "forbids the Federal Government to deny equal protection of the law." Id.

In the instant case, if the Court assumes the existence of an interest protected by the Fifth Amendment due process clause—a merits concern rather than a jurisdictional concern—and takes as true the allegation that discrimination took place, there is a constitutional controversy over which this Court has federal-question jurisdiction. Whether Congress has created "equally effective alternative remedies," such that relief in the form of damages "might be obviated," is another merits pleading concern that the Estate has not developed in its motion beyond its argument that the Contract Disputes Act and the Tucker Act deprive this Court of jurisdiction. Id. at 248. Because the Court has jurisdiction over the subject matter of this dispute, the discussion proceeds to the Estate's primary argument for dismissal, the Maine Probate Code's limitation on the survival of claims against the deceased.

**B.  "Survivability" of Constitutional Claims**

According to the Estate, Maine law has forever barred Gross's Fifth Amendment claim against Robert Fiorentino because Mr. Fiorentino is deceased, the personal representative of his estate issued notice by publication to estate creditors on May 10, 2006, and Gross failed to present his claim within four months after the date of first publication. (Mot. to Dismiss at 8, citing 18-A M.R.S. § 3-801.) Gross captions his argument to deflect this challenge as follows:

"Section 1983 Action survives Death." (Response at 7.) The amended complaint, however, does not contain a Section 1983 claim and the Section 1981 reference in the complaint does not assist Gross because this case does not involve discrimination on the basis of race. Fantini v. Salem State Coll., 557 F.3d 22, 33-34 (1st Cir. 2009). Putting these labels aside, Gross otherwise argues that equity prevents application of the probate bar because he never received personal notice from the Estate and did not know of Fiorentino's death until advised of it in the course of this action. (Response at 7.) Otherwise, Gross contends that the Probate Code does not actually impose any bar against the presentation of claims to the personal representative because section 3-817 of the Code says that claims survive against the personal representative and section 3-802(10) [sic] contains a tolling provision for certain claims already accrued as of the decedent's death. (Id. at 8.) Next, Gross cites 28 C.F.R. § 50.15, which addresses the right of federal employees to obtain representation by the Department of Justice. Gross's view is that the Probate Code should not apply here because "it is likely that the Government has agreed to indemnify and defend" the Estate. (Id.)

      Gross's argument that the Probate Code does not actually impose a restriction on the survival of claims is not based on a sound interpretation of the Probate Code. Claims against a Maine decedent survive against the personal representative of his estate, but they expire unless they are presented within a confined period of time. 18-A M.R.S. § 3-803. For claims that accrued prior to the decedent's death, the period is either four months from first publication of a notice to creditors of the estate, id. §§ 3-801(a), 3-803(a)(1), or nine months from the decedent's death, id. § 3-803(a)(2). For claims that accrued after death, the period is either four months following the accrual date or nine months from the decedent's death, whichever is later. Id. § 3-803(b)(2); Ashley Furniture Indus. v. Redman, No. CV-09-639, 2010 Me. Super. Lexis 139, *5

15

(Me. Super. Ct. Cum. Cty. July 21, 2010).[3] A claim against a decedent's estate may be presented by "commenc[ing] a proceeding against the personal representative in any court where the personal representative may be subjected to jurisdiction, . . . but the commencement of the proceeding must occur within the time limited [sic] for presenting the claim." 18-A M.R.S. § 3-804(2). Statutes of limitation existing outside of the Probate Code are tolled for a four-month spell, as Gross indicates, but this has no impact on the Probate Code's own internal limitation provisions. Id. § 3-802(b). The Probate Code's provision concerning the survival of actions, id. § 3-817, does not contradict the Code's bar against actions not timely presented, contrary to Gross's suggestion.

Neither party has briefed the issue of whether state law or federal common law determines "survivability" of a constitutional claim against a deceased federal officer. Arguably, Gross has waived any argument that state law does not supply the rule of decision because he does not suggest that it would not. Despite the parties' disinclination to brief the issue, there is precedent available for the parties and the Court to consider. My own assessment of the survivability issue tracks the assessment made by Judge Graham of the Southern District of Ohio in Haggard v. Stevens, No. 2:09-cv-1144, 2010 U.S. Dist. Lexis 95729, 2010 WL 3658809 (S.D. Ohio Sept. 14, 2010) (collecting and discussing cases on survivability of Bivens actions and applying Ohio law to find that Bivens claim against federal officer's estate did not survive the officer's death and denying motion to substitute estate). I refer the parties and the Court to that very thorough decision for an explanation on how the choice of law inquiry unfolds on the survivability question.

---

[3] There is an exception for claims "for which the decedent or the personal representative is protected by liability insurance." 18-A M.R.S. § 3-803(c)(2). Gross has not alleged or even argued that Administration employees like Fiorentino have insurance covering Bivens actions and it would not be a plausible inference to draw in Gross's favor.

For Bivens actions, federal courts in this circuit look to state law to determine the applicable statute of limitation. Estate of Barrett v. United States, 462 F.3d 28, 38 (1st Cir. 2006). In the analogous context of federal civil rights claims, federal courts also look to state law for statutory tolling provisions and computational rules. Douglas v. York County, 433 F.3d 143, 144 (1st Cir. 2005) (tolling); Poy v. Boutselis, 352 F.3d 479, 484-85 (1st Cir. 2003) (computation rule); see also Mouradian v. John Hancock Cos., 930 F.2d 972, 974 (1st Cir. 1991) (alluding to the application of state law exceptions to otherwise applicable limitation periods). The one component of the limitations analysis for which federal law is routinely applied is in relation to when a federal claim accrues, when the court needs a claim-accrual date to determine when a state limitation period commenced. Nieves v. McSweeney, 241 F.3d 46, 52 (1st Cir.2001). There is no persuasive reason why this approach to limitations would not apply equally with respect to a state law limitation on claims against a decedent's estate.

Pursuant to Maine law, even in cases where a claim had not accrued as of the death of the decedent, that claim is barred unless presented within either four months of its accrual or nine months of the decedent's death, whichever is later. Id. § 3-803(b)(2). This limitation applies to all claims not otherwise excepted and there is no exception for tort or civil rights violations by the decedent.[4] See Barrett, 462 F.3d at 38 (reserving the question of whether a Bivens action would be governed by a state statute of limitation for civil rights actions or a statute of limitation for tort actions). In other words, the Probate Code's limitations are limitations of general applicability.

In this case, the latest possible date on which Gross could have timely presented his claim against the Estate would have been sometime in 2007, given a death in 2006 and Gross's alleged

---

[4] Unless, and only to the extent that, there is insurance. See note 3, *supra*.

receipt of freedom of information materials sometime in 2006. This would have afforded him at least four months in which to present a claim against the Estate. However, Gross did not pursue a claim against the Estate until December of 2010, more than three years too late. There is no basis to find that constitutional protections would be unreasonably undermined by application of the Maine Probate Code's limitation provisions under these circumstances.

Gross fails to generate a genuine issue of material fact that would prevent the Probate Code from barring his claim against the Estate. The Estate asserts that Robert Fiorentino died March 15, 2006, that his will was filed and his estate probated in Cumberland County Probate Court, and that the Estate published notice to creditors on May 10, 2006.[5] (Decl. of Jacqueline Fiorentino, ¶¶ 3-5, Doc. No. 26.) This declaration lies outside the four corners of the complaint. The Court might choose to deny this basis for dismissal at this time and revisit it in the context of a later summary judgment motion. However, Gross fails to raise any objection to the declaration. Consequently, conversion to a summary judgment disposition is appropriate in this case. Boateng, 210 F.3d at 60-61. Nothing is to be gained by forestalling a resolution of the question and requiring the Estate to remain in the case on a time-barred claim pending submission of a summary judgment motion. Gross has not even suggested what fact could possibly arise in discovery that would undermine application of the probate bar.[6]

---

[5] The Fiorentino Declaration also presents probate court docket information (Doc. No. 26-1), but the exhibit is not an official version of the docket that would call for the Court to take judicial notice and the probate court docket is not referenced in Gross's pleading.

[6] Gross references equity and tolling in his memorandum, but he does not offer an argument that would save his claim against the statutory bar. The fact that Gross initially conceived of his claims as claims against the Administration rather than claims against individual federal officers would not excuse a failure to identify the individual officers years in advance of his December 2010 pleading. In any event, Gross's original complaint against the Commissioner was not filed until August of 2010, also far outside of the limitation period. Gross fails to identify any statutory or common law basis to toll the running of the Probate Code's bar for more than three years or to estopp the Estate from asserting the bar as a defense. See Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 71-73 (1st Cir. 2005) (federal equitable tolling and estoppel standards); Dasha v. Maine Med. Ctr., 665 A.2d 993, 995 n.2 (1995) (state equitable tolling and estoppel).

As for Gross's reference to a federal regulation concerning representation and indemnification of federal officers by the Department of Justice, that regulation states that "neither the Department of Justice nor any agency of the U.S. Government is obligated to pay or to indemnify the defendant employee for any judgment for money damages which may be rendered against such employee" and that "where authorized, the employee may apply for such indemnification from his employing agency upon the entry of an adverse verdict, judgment, or other monetary award." 28 C.F.R. § 50.15(a)(11); see also id. § 50.15(c)(1), (4). Although a defense is being provided in this case, and although indemnification may be available in the event of a judgment, it does not follow that personal defenses held by a federal officer or his Estate are lost.

## Conclusion

Because the Maine Probate Code has "forever barred" Gross's action against the Estate by operation of a limitation on the survivability of claims not timely presented, I RECOMMEND that the Court GRANT the Estate's Motion to Dismiss (Doc. No. 25) and dismiss the claims against the Personal Representative / Estate with prejudice.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

May 6, 2011